# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-0608 (JFB)
_____

WILFREDO VELASQUEZ,

Petitioner,

VERSUS

ROBERT ERCOLE, SUPERINTENDENT,

Respondent.

_____

**MEMORANDUM AND ORDER**
July 20, 2012
_____

JOSEPH F. BIANCO, District Judge.

Wilfredo Velasquez ("petitioner or "Velasquez") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on April 30, 2002, in the County Court, Suffolk County (the "trial court"), for murder in the second degree (N.Y. Penal Law § 125.25 (1) and (2)) and robbery in the first degree (N.Y. Penal Law § 160.15). Petitioner was sentenced to an indeterminate sentence of 25 years' to life imprisonment for second degree murder and a determinate sentence of 10 years for robbery, to run concurrently. (5/29/02 Sent. Tr.[1] at 3.) In the instant petition, petitioner argues for a grant of a writ of habeas corpus claiming that (1) his guilty plea and waiver of right to appeal was not knowingly, voluntarily and intelligently made, and (2) he received ineffective assistance of counsel. For the reasons set forth below, the petition is denied in its entirety. Although the petition is timely, the claim that the guilty plea was not knowing, voluntary, or intelligent is procedurally barred, and, in any event, is meritless. Furthermore, the claim that petitioner received ineffective assistance of counsel is also without merit.

I. BACKGROUND

A. Factual Background

Petitioner was charged with two counts of second degree murder, N.Y. Penal Law § 125.25; robbery in the first degree, N.Y. Penal Law § 160.15; grand larceny in the

---

[1] "5/29/02 Sent. Tr." refers to the transcript of the petitioner's sentencing proceeding, which took place on May 29, 2002.

1

fourth degree, N.Y. Penal Law § 155.30; and leaving the scene of an incident without reporting, N.Y. Vehicle and Traffic Law § 600.1, in connection with the stabbing death of Katrin Czaplick ("Czaplick"). (Suffolk County, Indictment Number 1870-01.)

On April 30, 2002 Velasquez pled guilty to robbery in the first degree and one count of second degree murder whereby the remaining charges were dismissed. (Plea T.[2] at 9-10, 21-22.) During Velasquez's plea, he stated that, on August 21, 2001, he robbed a taxi driver at knife point and drove away with the taxicab. (Plea T. at 16-19.) Velasquez also stated that, on August 23, 2001 he stabbed his landlord Czaplick to death with a kitchen knife. (*Id.* at 19-21.)

During the plea proceeding, the court did not inform Velasquez that his conviction, pursuant to his plea agreement, was not appealable. However, during the petitioner's sentencing proceeding, the court explained to Velasquez that he would be forfeiting his right to appeal his conviction if he still decided to accept the plea agreement. (5/29/02 Sent. Tr. at 4-7.) After discussing the matter with his attorney (*id.* at 6), Velasquez chose to accept the plea agreement, and the court sentenced him to 25 years' to life imprisonment for second degree murder and 10 years' imprisonment for robbery in the first degree. (*Id.* at 11.) The sentences were to run concurrently. (*Id.*) After petitioner was sentenced, five years of post-release supervision was added to the petitioner's sentence because post-release supervision was a mandatory component of a determinate sentence for robbery in the first degree. N.Y. Penal Law §§ 70.00(6), 70.45(2)(f); *People v. Velasquez*, Ind. No. 1870-2001 (Cnty. Ct., Suffolk Cnty., Feb. 27, 2008).

B. Procedural History

Petitioner's motion to file a late Notice of Appeal was denied by the Second Department. *People v. Velasquez*, AD No. 2003-00636 (N.Y. App. Div. 2d Dept., Feb. 26, 2003). The Court of Appeals denied leave to appeal on April 28, 2003. *People v. Velasquez*, 99 N.Y.2d 659 (2003).

On February 4, 2008, Velasquez filed a motion under N.Y. C.P.L. § 440.10(1)(h) in Suffolk County Court seeking to vacate his conviction, claiming that: (1) he did not knowingly and voluntarily enter into the plea agreement, and (2) his counsel was ineffective. (Pet.'s Mot. to Vacate Judgment Under C.P.L. § 440.10(1)(h), Feb. 4, 2008.) Specifically, the petitioner argued that the court did not tell him the nature of the charges, the elements of the crimes charged, the rights he would relinquish and the potential consequences of the plea, or of the post-release supervision. (*Id.*) Velasquez also argued that his attorney failed to: (1) discover potentially exculpatory evidence (2) advise petitioner of possible defenses to the charges; and (3) file a notice of appeal on his behalf. (*Id.*) On February 27, 2008, the Suffolk County Court denied Velasquez's C.P.L § 440.10 motion on the merits, ruling that after reviewing the transcripts of the plea and sentencing it was evident that the court carefully questioned the defendant to ascertain that the defendant fully understood the gravity of the charges against him and the potential sentences he could receive were he to be found guilty after trial. *People v. Velasquez*, Ind. No. 1870-2001 (Cnty. Ct., Suffolk Cnty., Feb. 27, 2008). Thus, the court found that it was clear that the defendant understood what he was doing and that he received a sentence more favorable than what he was otherwise

---

[2] "Plea Tr." refers to the transcript of the petitioner's guilty plea, which took place on April 30, 2002.

exposed to, through the efforts of his attorney. *Id.* The court also found that the defendant received effective assistance of counsel, ruling that the defendant's attorney negotiated a favorable disposition after having made appropriate motions, conducting investigations, and attending numerous conferences. *Id.* The court, however, also ruled that, since post-release supervision was not part of the initial record, the petitioner should be resentenced. *Id.* Accordingly, the petitioner was resentenced on February 25, 2009, in Suffolk County Court, to the terms that were previously imposed, but without any post-release supervision. (2/25/09 Sent. Tr.[3] at 3.) Leave to appeal the C.P.L § 440.10 determination to the Appellate Division, Second Department, was denied. *People v. Velasquez*, Ind. No. 1870-01 (N.Y. App. Div. 2d Dept., May 13, 2008).

On February 5, 2009, petitioner, proceeding *pro se*, submitted the instant habeas petitioner through the prison mailing system. On March 30, 2009, respondent moved to dismiss the petition on the grounds that it was untimely. Petitioner replied in opposition to the motion to dismiss on June 10, 2009. By Order dated February 16, 2010, the Court denied the motion to dismiss without prejudice, explaining that respondent had not addressed the issue of whether petitioner's February 25, 2009 resentencing restarted the statute of limitations. The Court directed that respondent address that issue, as well as the merits of the petition. On April 13, 2010, respondent submitted a memorandum of law opposing the habeas corpus petition.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554(d). "Clearly established Federal law" is compromised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than

---

[3] "2/25/09 Sent. Tr." refers to the transcript of the petitioner's resentencing proceeding, which took place on February 25, 2009.

3

[the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F. 3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

The petitioner has alleged two grounds in his habeas petition: (1) he did not knowingly, intelligently and voluntarily enter into the plea agreement; and (2) his counsel was ineffective. (Pet. at 4.)

Respondent seeks to dismiss the habeas corpus petition on the following grounds: (1) the petition is untimely; (2) petitioner's claim that his plea was not knowing, voluntary, or intelligent is procedurally barred as unexhausted because petitioner did not raise the claim on direct appeal, and, in any event, this claim is meritless; and (3) petitioner did not receive ineffective assistance of counsel.

Although the petition is timely, the claim that the guilty plea was not knowing, voluntary, or intelligent is procedurally barred, and, in any event, is meritless. Furthermore, the claim that petitioner received ineffective assistance of counsel is also without merit.

### A. Timeliness

#### 1. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on state prisoners seeking habeas corpus review in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from the latest of:

> (A) the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). Pursuant to AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). The Second Circuit has held that "[a] state court application or motion for collateral relief is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999); *see also Carey v. Saffold*, 536 U.S. 214, 217, 220-21 (2002); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Gant v. Goord*, 430 F. Supp. 2d 135, 138 (W.D.N.Y. 2006).

Pursuant to New York law, within thirty days of service of the order sought to be appealed, an appellant must make an application for a certificate granting leave to appeal to the New York Court of Appeals. N.Y.C.P.L. § 460.10(5). Therefore, when a defendant fails to appeal a decision of the New York Supreme Court, Appellate Division, the conviction becomes final thirty days after the service of Notice of Entry. *See Padilla v. Keane*, No. 03 Civ. 357(VM), 2003 WL 22462004, at * 1 (S.D.N.Y. Oct. 29, 2003) (appeal to the court of appeals from an order of an intermediate appellate court must be taken within 30 days) (citing *M.P. v. Perlman*, 269 F. Supp. 2d 36, 38 (E.D.N.Y. June. 10, 2003)).

The statute of limitations clock does not begin to run until both the conviction and sentence are final. *See, e.g.*, *Ferreira v. Dep't of Corr.*, 494 F.3d 1286, 1287 (11th Cir. 2007). In *Burton v. Stewart*, 549 U.S. 147 (2007), the Supreme Court held that the statute of limitations in AEDPA runs from "'the date on which the judgment became *final*,'" and "'[f]inal judgment in a criminal case means sentence.'" 549 U.S. at 156 (quoting § 2244(d)(1)(A) and *Berman v. United States*, 302 U.S. 211, 212 (1937) (emphasis added)). Accordingly, the petitioner's "limitations period did not begin until both his conviction *and* sentence" became final. *Id.* at 156 (emphasis in original). In *Ferreira*, the Eleventh Circuit held that the habeas petition was timely because it was filed within one-year of the date of petitioner's resentencing on April 14, 2003, even though, in the absence of the resentencing, the statute of limitations to file the petition would have expired on June 2, 2002.[4] 494 F.3d at 1288, 1292-93; *see also*

---

[4] In *Ferreira*, petitioner was tried and convicted in state court, then appealed through the state appellate system. 494 F.3d at 1288. On September 11, 1997, the Florida Supreme Court denied his appeal. *Id.* His right to direct review terminated ninety days later, when he decided not to file a petition for certiorari. *Id.* On August 18, 1998, petitioner filed a post-conviction motion in Florida, tolling AEDPA's statute of limitations. *Id.* The state court denied the motion on February 8, 2002. *Id.* Petitioner's statute of limitations to file a federal habeas petition expired on June 2, 2002. *Id.* On June 24, 2002, petitioner filed another post-conviction motion in the state system to correct his sentence, and the state court granted the motion. *Id.* Petitioner was resentenced, and the mandate finalizing the judgment was issued on April 14, 2003. *Id.* 57 days later, on June 10, 2003, petitioner filed his habeas petition, which included "claims concerning only his original conviction and not his subsequent resentencing." *Id.* Although petitioner's statute of limitations to file a federal habeas petitioner had expired on June 2, 2002, petitioner's resentencing on April 14, 2003 restarted the statute of limitations clock. *Id.* at 1288, 1292-93. The petition was timely because it was filed within one-year of April 14, 2003, the date of resentencing,

5

*Edwards v. New York*, 08 Civ. 0112 (RJS) (JCF), 2009 U.S. Dist. LEXIS 108427, at *7 (S.D.N.Y. Oct. 23, 2009) ([petitioner's "judgment became final . . . when he was resentenced"), *adopted by* 2009 U.S. Dist. LEXIS 108429 (S.D.N.Y. Nov. 18, 2009). Although the Second Circuit has never addressed this precise issue, this Court finds the Eleventh Circuit's analysis in *Ferriera* to be persuasive.

2. Application

In the instant case, although petitioner was originally sentenced on May 29, 2002, he was resentenced on February 25, 2009 to the same sentence without a term of post-release supervision. Unlike the petitioner in *Ferreira*, the petitioner in this case mailed his petition on February 5, 2009 (and filed the petition on February 9, 2009) – *prior* to his resentencing. However, as discussed below, the Court will construe the June 10, 2009 submission by the petitioner – in which he explains that he was resentenced on February 25, 2009 – to be an amendment to his habeas petition. Thus, the petition (as amended) is timely because the statute of limitations clock did not start to run until February 25, 2009, when the petitioner's conviction *and* sentence became final.

This Court's conclusion on this issue is consistent with other courts who have confronted similar circumstances. For example, in *Mercado v. Lempke*, No. 07-CV-9865 (KMK)(PED), 2009 U.S. Dist. LEXIS 71913, at *2 (S.D.N.Y. Aug. 13, 2009), the petitioner filed his petition on October 17, 2007, then filed a post-conviction motion in or around April 2008 to set aside his January 2003 sentence. He was resentenced on July 24, 2008. The court explained how the procedural posture

---

even though the petition did not challenge the resentencing. *Id.*

differed from *Burton v. Stewart*, 549 U.S. 147 (2007):

> [H]ere, the Petition was untimely when filed, and Petitioner received his new sentence, which restarted the limitations clock, while the Petition was pending in this Court. As noted above, Petitioner's application for habeas corpus was filed on October 17, 2007, more than two years after the limitations period had run on September 22, 2005. In addition, his Petition was filed six months *before* Petitioner's April 2008 CPL § 440.20 post-conviction motion to set aside his January 2003 amended sentence, and nine months *before* Petitioner received his amended sentence on July 24, 2008.

*Mercado*, 2009 U.S. Dist. LEXIS 71913, at *11 (emphasis in original). The court held that the petitioner's filing of a collateral state petition did not "revive" his limitations period, so the petition did not "become retroactively timely due to Petitioner's resentence." *Id.* at *11-12. However, the court construed an affirmation that petitioner had filed on October 20, 2008 as a request for leave to amend his petition in light of the resentencing. *Id.* at *12. The court permitted the petitioner to amend the petition. *Id.* at *17.

Similarly, in *Roberts v. Uttecht*, No. CV-10-85-LRS, 2010 U.S. Dist. LEXIS 92777, at *11 (E.D. Wash. Sept. 3, 2010), petitioner's federal habeas petition "was filed on March 29, 2010, *before* he was resentenced on June 7, 2010," and was "therefore untimely" because the "resentencing had not yet taken place so as to re-start the one year limitations period." (emphasis in original). The court determined, "for the sake of efficiency and in the interest of justice," to permit the

petitioner to amend the petition to incorporate the resentencing date as the date for restarting the statute of limitations. *Id.*

Like the petitioners in *Mercado* and *Roberts*, petitioner in this case filed his petition prior to his resentencing. In each of those cases, the court permitted the petitioner to amend his complaint to incorporate the resentencing date as the date for restarting the statute of limitations. In this case, petitioner filed an Opposition to respondent's Motion to Dismiss on June 10, 2009 in which he explains that he was resentenced on February 25, 2009, and states that "[s]uch resentence should reset the statute of limitations period." (Pet.'s Opp., June 10, 2009, ECF No. 12.) The court will construe petitioner's June 10, 2009 filing as an amendment to the habeas petition. Because the amendment was filed within one year of the petitioner's February 25, 2009 resentencing, and the statute of limitations clock does not begin to run until both the conviction and sentence are final, the petition was timely under AEDPA. *See Ferreira*, 494 F.3d at 1288.

B. Procedural Bar

1. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegation were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

7

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted on those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia,* 188 F.3d at 77 (quotation marks omitted).

8

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice results therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3. Application

The Court concludes that petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent is procedurally barred from review. The petitioner has not exhausted his claim that his plea was not knowing, intelligent, and voluntary because he failed to raise it on direct appeal. In ruling on the C.P.L. § 440.10 motion, the Suffolk County Court noted that Velasquez's claims concerning the voluntariness of the guilty plea were "record based" and "should have been reviewed on direct appeal." *People v. Velasquez*, Ind. No. 1870-2001 (Cnty. Ct., Suffolk Cnty., Feb. 27, 2008). Thus, the petitioner's claim with respect to his guilty plea is procedurally barred.

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has failed to meet this burden. Petitioner has provided no explanation for his failure to properly exhaust this claim in state court. Because petitioner has not provided a satisfactory explanation for his failure to properly exhaust this claim in state court, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, this claim is procedurally barred from review by this Court. In any event, assuming, *arguendo*, that this claim is reviewable, it is without merit, as a set forth *infra*.

### C. Merits

#### 1. Validity of Plea

Although petitioner's claim that his guilty plea was not knowing, voluntary and intelligent is procedurally barred, even assuming *arguendo* that this claim was properly before this Court, the claim is without merit.

##### a. Legal Standard

The well-established standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citations omitted). As will be discussed in more detail *infra*, the Court determines that trial counsel's advice was well within the range of competence demanded by attorneys in criminal cases. Moreover, the Court proceeds to examine the entire circumstances of petitioner's guilty plea, and concludes that petitioner's guilty plea was done knowingly, intelligently, and voluntarily.

9

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the grounds that it was not knowing and voluntary. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. People of New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'" *Morales v. United States*, No. 08 Civ. 3901, 2009 WL 3353064, at *5 (S.D.N.Y. Oct. 20, 2009) (quoting *Bousley*, 523 U.S. at 619 (internal quotations omitted)).

b. Application

The petitioner argues that his guilty plea was not knowing, intelligent, and voluntary because the court erred in accepting his guilty plea without first apprising the petitioner about the nature of the charges and the elements of the crime, all the rights the petitioner was relinquishing, and the potential consequences of his plea. The petitioner also alleges that the court did not distinguish the waiver of trial rights from the right to appeal and did not inform him that he would receive post-release supervision after being incarcerated. (Pet. at 4.) The Court rejects each of these arguments on the merits.

Petitioner's arguments that his plea was not knowing, intelligent and voluntary were rejected by Suffolk County Court on the merits in its decision on the C.P.L. § 440.10 motion. *People v. Velasquez*, Ind. No. 1870-2001 (Cnty. Ct., Suffolk Cnty., Feb. 27, 2008). Thus, because the Suffolk County Court's decision was an adjudication on the merits," *see* 28 U.S.C. § 2254(d), it is entitled to the deferential standard of review under AEDPA. *See, e.g.*, *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by [AEDPA] . . . .").

First, petitioner argues that the court erred in accepting his guilty plea without apprising him about the nature of the charges and the elements of the crime. (Pet. at 4.) However, at the plea proceeding, Velasquez fully allocuted to the crimes of robbery in the first degree and murder in the second degree in a manner that made clear

that he understood the nature of the charges and the elements of the crimes.

With respect to the charge of robbery in the first degree, Velasquez stated that, on August 21, 2001, he was alone in a cab with the cab driver. (Plea Tr. at 16.) Velasquez admitted that he had a knife with him that he brought from his kitchen. (*Id.*) The prosecutor asked if Velasquez had "threaten[ed] the taxicab driver with that knife and demand[ed] money from him," and Velasquez initially said no. (*Id.* at 17.) After Mr. Wilutis, Velasquez's counsel, conferred with his client, the prosecutor asked, "Did you show the knife to [the taxi driver] to steal property from him?" (*Id.* at 18.) Velasquez replied, "Yes, I showed it to him." (*Id.*) Petitioner then admitted that he drove away with the cab after he showed the driver the knife, and he did so without the driver's permission. (*Id.* at 18-19.)

With respect to the murder in the second degree charge, Velasquez admitted that, on August 23, 2001, he stabbed his landlady Katrin Czaplick several times with a kitchen knife. (*Id.* at 20.) He further admitted that his intention, while stabbing her, was to "kill her or cause her death." (*Id.* at 20-21.) Defense counsel then stipulated that Czaplick died as a result of the stab wound inflicted by petitioner, and petitioner admitted that he was aware that she died as a result of the stabbing. (*Id.* at 21.)

The court then found that "there was an allocution" to the two crimes. (*Id.* at 21-22.) Thus, the record supports a finding that Velasquez was not only aware of, but voluntarily admitted to, all the elements of second degree murder and first degree robbery during his plea proceeding.

Second, petitioner argues that the court erred in accepting his guilty plea without apprising him of all the rights he was relinquishing and the potential consequences of his plea. (Pet. at 4.) However, it is clear from the following colloquy at the plea proceeding that petitioner was fully aware of the consequences of his plea:

> The Court: As you know, you've been charged with two counts of Murder in the Second Degree, among others, but there's also a count of Robbery in the First Degree. Very serious crimes . . . Now, the last time the case was on for conference, Mr. Collins, the prosecutor, relayed to your attorney what we referred to as a – as an offer to see whether you'd be willing to accept a plea prior to going to trial. No one can make you or force you to accept a plea. I believe the offer – and stop me – correct me if I'm wrong, Mr. Collins – is twenty-five to life covering the murder cases and the separate robbery cases.
>
> Prosecutor: That's correct, your Honor.
>
> The Court: And, Mr. Wilutis [petitioner's counsel], during our conference today, indicated that you were not prepared to accept that. Is that true?
>
> Petitioner: Exactly.
>
> The Court: Well, I'll have to tell you then, that Mr. Collins advised both myself and Mr. Wilutus that that offer is being withdrawn. So it will not be any longer for consideration. If you're convicted after trial, I'm sure the prosecutor will be seeking or asking the Court to sentence you to a greater sentence than that.

(Plea Tr. 4-6.)

11

> The Court: So, again you've been presented with all the facts as they're available to the Court and the attorneys, Mr. Velasquez, and it's your decision. No one can force you to do anything. And please, don't interpret what I'm saying to you today as any attempt to pressure you . . . . So, if you want a moment to speak to your attorney now before we finish our proceeding in court today, fine. But if your position has not changed at all based upon what I've told you in open court, then I'm putting the case down for hearing in about two weeks.
>
> Petitioner: May I speak with the lawyer a few words first?
>
> The Court: Sure.

(Plea Tr. 7-8.)

> Petitioner's Counsel: At this time, he's authorized me on his behalf to withdraw the previously entered pleas of not guilty and enter a plea of guilty as to count one of the indictment, Murder in the Second Degree, which is the intentional murder charge, and to count three, Robbery in the First Degree, with the understanding that the District Attorney will recommend a sentence of twenty-five years to life on the Murder Second Degree charge and a ten-year determinate sentence to run concurrent with the count number one, twenty-five years to life.

(Plea Tr. at 10.)

> The Court: We're doing something today that's very serious and important, and I, the Judge, have to be satisfied, fully satisfied, that you understand exactly what's going on. That's one of the reasons why we're using the help of the interpreter. So, if I say something to you and you hear it through the interpreter, and you do not understand what I mean, please, indicate that to her and we'll try to make the meaning more understandable. Or clearer.
>
> Petitioner: I'm understanding everything perfectly.
>
> The Court: Fine. Did you hear the pleas that were just offered on your behalf by Mr. Wilutis?
>
> Petitioner: Yes.
>
> The Court: Did you give him permission and authority to do that for you?
>
> Petitioner: Exactly.
>
> The Court: Because you had a right to a trial, as I mentioned a few moments ago, a trial by jury. But if I accept the pleas this morning, there will be no trial. Do you understand that?
>
> Petitioner: Exactly. I understand.
>
> The Court: If you wanted to go to trial, you would have certain rights. You would have the right to be confronted by the witnesses testifying against you, you would have the right to question those witnesses through your lawyer, you would have the right to call your own witnesses, you would have the right to testify on your own behalf if you wished. If you decided not to do that, the jury would be told that they were to draw no adverse inference from that, whatsoever. But you're giving up all those rights by your plea. Do you understand that?

Petitioner: Yes, I understand.

The Court: If you wanted to go to trial, before you could be convicted of any of these charges, a jury of twelve people that you helped select with your lawyer, unanimously, all twelve of them would have to find you guilty beyond a reasonable doubt. Are you aware of that?

Petitioner: Yes.

The Court: Finally, sir, do you understand that a conviction following a plea of guilty such as what we're doing today is just the same legally as a conviction following a trial in which the jury finds you guilty beyond a reasonable doubt? Do you understand that?

Petitioner: Yes, I understand.

(Plea. Tr. at 12-15.)

As this colloquy demonstrates, the court informed petitioner: (1) the length of the sentence and the crimes to which he was pleading; (2) the many rights he would have at trial that he was giving up by pleading guilty; and (3) that a conviction following a plea was legally the same as a conviction following a trial in which a jury finds the defendant guilty beyond a reasonable doubt. The petitioner verbally indicated that he understood that he was foregoing each of those rights. Accordingly, the trial court fully informed petitioner of the rights he was relinquishing and the potential consequences of his guilty plea.

Third, petitioner argues that the trial court erred in accepting his guilty plea without distinguishing the waiver of trial rights from the right to appeal. (Pet at 4.) The transcript of the plea proceedings on April 30, 2002 does not reflect any discussion of petitioner's waiver of the right to appeal. (*See* Plea Tr.; 5/29/02 Sent. Tr. at 3-4.) However, at sentencing, the Court engaged in an extensive colloquy with the petitioner concerning his right to appeal, and petitioner expressly waived his right to appeal. (5/29/02 Sent. Tr.) Specifically, the following conversation occurred:

Prosecutor: [O]ne thing we neglected to put on the record at the time of the plea was the defendant's waiver of appeal, and I think Mr. Wilutis is prepared on that at this time.

The Court: I didn't have that in my notes, but was that part of the agreement?

Petitioner's Counsel: It was, Judge, and I had discussed that with my client prior to the plea. That wasn't mentioned during the actual allocution. We did not go into that, but I believe my client is prepared to waive his right to appeal.

The Court: I'm going to address that right now then, before [the prosecutor] speaks.

Prosecutor: Please, your Honor. Thank you.

The Court: Mr. Velasquez, I understand that part of this disposition, when your attorney has spoken to the prosecutor, was the prosecutor's insistence or requirement that, as part of the disposition here, that you waived your right of appeal. In other words, the prosecutor is looking and on behalf of the family here, for closure or finality to this case. In the normal course of events, you would have 30 days from today in which to appeal the sentence that I'm going to

13

impose, and you could go to the appellate division, which is a higher court, and argue that some error or mistake was made here. . . . If there is an error, it generally arises in the context of a trial. Here we didn't have a trial. You were placed under oath, you admitted the allegations fully that constitute both of these crimes, and I'm prepared to carry out the sentence that had been agreed upon at the time that you took your plea. So the chances of you having any valid grounds for appeal are virtually nil, nonexistent, in my judgment anyway. The prosecutor wants you to give up that right here today, as I said, essentially so there will be closure and finality to this case. Have you discussed what that means, to give up your right of appeal, with Mr. Wilutis?

Petitioner: No.

The Court: Why don't you take a moment to do that now.

Mr. Wilutis: We did discuss it. I don't know if maybe he doesn't remember.

The Court: All right.

(Mr. Wilutis confers with the defendant.)

Mr. Wilutis: Judge, I've discussed this with my client. I believe he's prepared to waive his right to appeal. I believe he understands what that means. I've discussed that with him again. I would ask the Court to inquire of him.

The Court: Mr. Velasquez, is that so?

Petitioner: Yes.

The Court: You've spoken to Mr. Wilutis about what it means to give up your right of appeal?

Petitioner: Yes.

The Court: Do you have any questions of him about what it means?

Petitioner: No.

The Court: Do you have any questions of me as to what it means?

Petitioner: No.

The Court: I'm satisfied you understand what it means, and that your waiver is a voluntary, knowing and intelligent one, with the Court's explanation and your attorney's explanation, and certainly with the help of the interpreter.

(5/29/02 Sent. Tr. at 3-7.) As the above demonstrates, petitioner fully understood that he was giving up his right to appeal. After the Court explained, in detail, the nature of the right to appeal, petitioner conferred with his attorney, then said he had no questions for his attorney or for the court about what giving up the right of appeal means. Accordingly, petitioner understood that he was giving up his right to appeal.

Finally, petitioner argues that the trial court erred in accepting his guilty plea without informing him that he would receive post-release supervision after being incarcerated. (Pet. at 4.) This issue is now moot as the court resentenced the petitioner and rescinded the post-release supervision stipulation. (2/25/09 Sent. Tr. at 3.)

In sum, petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent is without merit. Petitioner clearly understood the nature of the charges

and the elements of the crime. Moreover, the trial court fully apprised petitioner of the rights he was relinquishing, the potential consequences of his plea, and clearly distinguished the waiver of trial rights from the right to appeal.

2. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of trial counsel because counsel failed to: (1) discover potentially exculpatory evidence (2) advise petitioner of possible defenses to the charges and the consequences of accepting a plea; and (3) file a notice of appeal on his behalf. (Pet. at 4.) As discussed below, each of petitioner's claims is meritless.

a. Legal Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 688 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Moreover, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* "Unlike the

15

determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

b.   Application

As a threshold matter, the Court notes that petitioner's ineffective assistance of counsel arguments were rejected by Suffolk County Court on the merits. *People v. Velasquez*, Ind. No. 1870-2001 (Cnty. Ct., Suffolk Cnty., Feb. 27, 2008). Thus, because the state court's decision was an adjudication on the merits, *see* 28 U.S.C. § 2254(d), it is entitled to the deferential standard of review under AEDPA. *See, e.g.*, *Dolphy*, 552 F.3d at 238.

The Court will address each of petitioner's arguments with respect to petitioner's claim of ineffective assistance of counsel.

i.   Failure to Discover Potentially Exculpatory Evidence

Petitioner claims that his trial counsel was ineffective for failing to discover potentially exculpatory evidence. Petitioner does not, however, identify what exculpatory evidence his trial counsel failed to identify. Petitioner has failed to demonstrate either *Strickland* prong with respect to counsel's alleged failure to discovery potentially exculpatory evidence.

The record supports the County Court's finding that the petitioner received meaningful representation from his counsel. Not only did the petitioner's counsel attend eleven conferences, but he made pretrial motions which included a challenge to the sufficiency of the grand jury minutes, an omnibus motion, and sought a severance of the robbery case from the homicide case. Counsel retained a private investigator to aid in preparation of the defense. Thus, there is no indication from the record that petitioner's counsel failed to discover any exculpatory evidence. Accordingly, counsel's representation did not fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.

Moreover, counsel negotiated for months and obtained a favorable plea agreement on behalf of his client. Petitioner ultimately pled guilty to a reduced charge with a prison term that was approximately half of his sentencing exposure under the initial indictment. Accordingly, there is no "reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lockhart,* 474 U.S. at 59.

ii.   Failure to Advise Petitioner of Possible Defenses

Petitioner claims that his trial counsel failed to properly advise defendant of possible defenses, specifically, the defense of intoxication. Trial counsel's performance was not deficient for failing to advise the petitioner on the possible defense of intoxication.

As discussed *supra*, the record establishes that petitioner was represented by a competent and diligent attorney. Nothing in the record suggests that counsel failed to consult with petitioner or to adequately consider the defense of intoxication in advising him regarding the

guilty plea. Moreover, counsel had good reason to advise the petitioner to plead guilty to the second degree murder and first degree robbery charges because the state had DNA evidence obtained from the murder victim's body that implicated Velasquez (Cnty. of Suffolk, Div. of Medical-Legal Investigations & Forensic Sciences, Crime Laboratory, Mar. 4, 2002), and a confession from Velasquez admitting to both the murder and robbery (Orals of Velasquez, SCDA Homicide Bureau, August 24, 2001; Cnty. of Suffolk "Advice of Rights" Waiver, August 24, 2001). Accordingly, counsel's representation did not fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.

As to the second prong of *Strickland*, petitioner has failed to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart,* 474 U.S. at 59. Even if the petitioner was intoxicated when he committed the crimes that he pled guilty to under New York law, "intoxication is not actually a complete affirmative defense to a criminal charge; it rather merely reduces the gravity of the offense by negating the specific intent element of the crime charged." *Garfield v. Poole*, 421 F. Supp. 2d 608, 612 (W.D.N.Y. 2006) (citing *People v. Harris*, 98 N.Y.2d 452, 474 n.4, 475 (2002) and N.Y. Penal Law § 15.25)). "Although it is true that a defendant may offer evidence of his intoxication whenever it is relevant to negate an element of the crime charged . . . , even an intoxicated person may be capable of forming the requisite intent." *Id.* at 613 (citing *People v. Robinson,* 161 A.D.2d 676 (2d Dept. 1990) and *People v. Bell,* 111 A.D.2d 926, (2d Dept. 1985)). "While the requisite level of intoxication need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent, the degree of intoxication that a defendant must demonstrate is quite high." *Id.* at 612. (quotations and citations omitted). Although the petitioner stated at the May 29, 2002 sentencing that the "accident happened under the influence of alcohol" and he was not "in [his] right mind," (5/29/02 Sent. Tr. at 9.), petitioner has not shown that there is a "reasonable probability" that he would have gone to trial had his attorney informed him of the defense of intoxication. As discussed *supra*, the prosecution's case against petitioner was very strong – including DNA evidence and a confession – and the plea ultimately reduced petitioner's sentencing exposure by half.

Accordingly, petitioner has failed to show ineffective assistance of counsel on the basis of counsel's alleged failure to advise the petitioner on the possible defense of intoxication.

### iii. Failure to Advise Petitioner of Consequences of Accepting a Plea

Additionally, the petitioner claims that his trial counsel failed to advise petitioner of the consequences of accepting a plea. As discussed *supra*, it is apparent from the plea and sentencing proceedings that petitioner conferred with his counsel concerning the consequences of accepting a plea. (*See* Plea Tr. 8-9; 5/29/02 Sent. Tr. at 6.) Thus, there is no indication from the record that counsel's representation in this regard fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.

Furthermore, even assuming that petitioner's counsel did not inform him of the consequences of pleading guilty, the Court did so extensively, on the record. For example, the Court informed petitioner: (1) about the length of the sentence and the crimes to which he was pleading; (2) the many rights he would have at trial that he was giving up by pleading guilty; and (3)

17

that a conviction following a plea was legally the same as a conviction following a trial in which a jury finds the defendant guilty beyond a reasonable doubt. The petitioner verbally indicated that he understood that he was foregoing each of those rights. When the Court asked the petitioner if he had any questions regarding the plea and sentence, petitioner asked only about the possibility of release in twenty-five years. (Plea Tr. 23.) At the sentencing proceedings, the petitioner verbally stated that he knew he was giving up his right to appeal. Thus, petitioner has failed to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart,* 474 U.S. at 59.

iv. Failure to File a Notice of Appeal

Petitioner claims that that his trial counsel was ineffective because counsel did not file a notice of appeal.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Supreme Court applied the *Strickland* test with regard to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. The Court noted that it had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. The issue in *Flores-Ortega*, however, was whether counsel is "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other." *Id.* The Court held that, in cases where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," the first question is whether counsel "in fact consulted with the defendant about an appeal." *Id.* at 478. If the attorney consulted with the defendant, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If, however, counsel has not consulted with the defendant, the relevant inquiry is "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal. *Id.* at 480. Instead, the Court held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* In making this determination, courts should consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Where a defendant pleads guilty, courts should consider factors such as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* If the court determines that counsel's performance was deficient, the court must turn to the second prong of the *Strickland* rule – whether counsel's deficient performance prejudiced the defendant. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. If so, a presumption of prejudice arises. *Id.*

In *Campusano v. United States*, 442 F.3d 770, 771 (2d Cir. 2006), the Second Circuit applied *Flores-Ortega* to the situation where an attorney failed to file a notice of appeal

requested by his client when the client waived appeal in his plea agreement. The Court held that "even after a waiver, a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967)." *Campusano*, 442 F.3d at 771-72.[5]

In the instant case, Velasquez has never stated that he gave his attorney specific instructions to file a notice of appeal. He simply argues that no notice of appeal was filed.[6] Thus, the relevant inquiry under *Flores-Ortega* is whether counsel "in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. The record does not indicate whether or not counsel consulted with Velasquez. Assuming, *arguendo*, that counsel did not consult with the defendant about an appeal, the question is whether "there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. As an initial matter, petitioner pled guilty, which "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." *Id.* Furthermore, the petitioner received the sentence he "bargained for as part of the plea." *Id.* Most significantly, petitioner's plea "expressly . . . waived . . . all appeal rights." *Id.* Accordingly, there is no reason to think that a rational defendant in petitioner's situation would want to appeal. Nor does the record reflect that Velasquez demonstrated in any way to counsel that he was interested in appealing. Thus, petitioner's counsel's performance was not deficient with respect to his alleged failure to consult with the petitioner about filing an appeal. Even assuming, *arguendo*, that counsel's performance was deficient, that deficiency did not prejudice the petitioner. The record does not reflect, and petitioner does not assert, that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Accordingly, since petitioner has not

---

[5] When a petitioner claims that he directed his attorney to file a notice of appeal, courts may, for example, review affidavits or hold a hearing to determine whether the petitioner, in fact, asked his counsel to appeal. *See, e.g.*, *Cross v. Superintendent, Wyo. Corr. Facility*, 9:07-CV-1158 (GLS/GHL), 2010 U.S. Dist. LEXIS 136058, at *8-10 (N.D.N.Y Nov. 3, 2010) (relying on affidavits filed in the Appellate Division to determine that petitioner had not instructed his attorney to file an appeal), *adopted by* 2010 U.S. Dist. LEXIS 136088 (N.D.N.Y. Dec. 23, 2010); *Rainford v. United States*, 648 F. Supp. 2d 476, 479 (E.D.N.Y. 2009) (disregarding petitioner's conclusory affidavit stating that he told his attorney to appeal in favor of attorney's "detailed affidavit" showing that the attorney had "thorough discussions with [petitioner] about whether to file a notice of appeal and [petitioner] made a studied and deliberate decision not to"); *Aboulissan v. United States*, 03-CV-6214 (CBA), 2008 U.S. Dist. LEXIS 10751, at *18 (E.D.N.Y. Feb. 13, 2008) (concluding, after a hearing, that petitioner had requested that his attorney file an appeal).

[6] In petitioner's C.P.L. § 440.10 Motion to Vacate Judgment of Conviction, petitioner stated "Defense counsel failed to file a NOTICE OF APPEAL in the behalf of the defendant," but at no point alleged that he requested that his attorney file a notice of appeal. (Pet.'s Aff. in Support of Mot. to Vacate Judgment of Conviction at 2, Dec. 19, 2007.) Similarly, in petitioner's Reply to the Opposition to his C.P.L. § 440.10 Motion, petitioner again stated that his attorney failed to file a Notice of Appeal, but did not allege that he requested that his attorney file a notice of appeal. (Pet.'s Reply to the Opp. to his C.P.L. § 440.10 Motion at 3, Jan. 31, 2008.) In the instant habeas petition, Velasquez merely stated, "Lawyer failed to file a Notice of Appeal" in response to the question of whether he appealed from the judgment of conviction. (Pet. at 1, 4.) Similarly, in the petitioner's Reply to the Motion to Dismiss, he states that the same attorney who represented him at the resentencing "failed to file a notice of appeal in petitioner['s] behalf." (Pet.'s Reply at 3, June 10, 2009, ECF No. 12.)

19

asserted that he asked his attorney to file a notice of appeal, and there is no reason to think that a rational defendant in this particular situation would want to appeal, or that this particular defendant reasonably demonstrated to counsel that he was interested in appealing, petitioner's counsel was not ineffective for failing to file a notice of appeal.

In sum, this Court cannot conclude that the Suffolk County Court's finding that petitioner received effective assistance of counsel was incorrect because the petitioner's counsel did not fall below an objective standard of reasonableness, nor did petitioner's counsel's behavior prejudice the outcome of petitioner's criminal charges. The state court decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented by the State court proceedings. Accordingly, the petitioner's application for habeas relief on the ground that his counsel was ineffective is denied.

IV. CONCLUSION

For the reasons set forth above, the Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Although the petition is timely, the claim that the guilty plea was not knowing, voluntary, or intelligent is procedurally barred, and, in any event, is meritless. Furthermore, the claim that petitioner received ineffective assistance of counsel is also without merit. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: July 20, 2012
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Karla Lato and Guy Arcidiacono, Assistant District Attorneys, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.